AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED DATE: s/ Thomas B. Snyder 12-9-22

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) a gold Apple iPhone 14 Pro; and (2) a blue iPhone 12 Pro Max, IMEI 350141789156385

Case No. M-22-927-AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:

See Attached Affidavit of Fidel Saenz.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Fidel Saenz, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/13/22

*Judge's signature*

City and state: Oklahoma City, Oklahoma

Hon. Amanda Maxfield-Green
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION UNDER RULE 41 FOR A WARRANT

I, Fidel Saenz, a Special Agent with Homeland Security Investigations (HSI), having been duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with HSI, and I have been employed with HSI since June 2017. I am currently assigned to the HSI office in Oklahoma City, Oklahoma (HSI Oklahoma City). During my time in law enforcement, I have successfully completed the Federal Criminal Investigator Training Program and the Immigration and Customs Enforcement (ICE) Special Agent Academy at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia.

2. As part of my drug-related investigations, I have coordinated and assisted with the execution of numerous search and arrest warrants, conducted physical surveillance, coordinated and executed controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means used by drug dealers to disguise the source and nature of their profits including money laundering and structuring schemes. I have also gained experience in the conducting of such investigations through attending financial investigations training, cyber-crimes investigations training, drug investigations training,

seminars, and everyday work. In light of this training and experience, I know the following:

    a.    I am aware of the methods in which drug couriers and distributors associated with DTOs often use electronic devices, to include but not limited to, computers, tablets, cell phones, and other electronic storage devices, to communicate and execute electronic transactions which can, in turn, create automatic records and documentation of the transactions;

    b.    I am aware that that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

    c.    I am aware that individuals engaged in the sale and distribution of illegal drugs will frequently keep contact information and other evidence of their financial dealings with DTOs on cellular phones, computers, tablets, and other storage devices and that they often keep such electronic devices on or near their person;

    d.    I am also aware that individuals engaged in the sale and distribution of illegal drugs will use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

    e.    I am aware that individuals involved in transporting illegal drugs will often use electronic devices to communicate with the individuals for whom they are transporting the drugs, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries.

3. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. I make this Affidavit in support of an application for a search warrant authorizing the examination of two cellular electronic devices, specifically (1) a gold Apple iPhone 14 Pro, (**Target Device 1**); and (2) a blue iPhone 12 Pro Max, IMEI 350141789156385 (**Target Device 2**), as further described in **Attachment A** and collectively referred to as the **Target Devices** for evidence of violations of federal law specifically: 21 U.S.C. § 841(a)(1) (possession and distribution of a controlled dangerous substance) and 21 U.S.C. § 846 (attempt and conspiracy). **Target Device 1** and **Target Device 2** are currently securely stored at the HSI Oklahoma City Office, within the Western District of Oklahoma. The applied-for warrant would authorize the forensic examination of **Target Device 1** and **Target Device 2** for the purpose of identifying electronically stored data particularly described in **Attachment B**.

## PROBABLE CAUSE

5. On November 8, 2022, Oklahoma Highway Patrol (OHP) Trooper B. Webb conducted a traffic stop on a red Lexus NX330, bearing Florida License Plate 23BSUW, driving eastbound on Interstate 40 in Canadian County, Oklahoma, for speeding above the posted 75 mile per hour speed limit.

3

6. Trooper Webb approached the vehicle on the passenger side and contacted the passenger, Paul McNeal, and the driver, Shawn Jordon.

7. Upon contact with the occupants of the vehicle, Trooper Webb immediately observed an odor of marijuana emanating from their vehicle. Trooper Webb advised Jordon he was speeding above the 75-mph posted speed limit. Trooper Webb then asked Jordon for his driver's license. Shortly after, Trooper Webb asked Jordon to step back to his patrol vehicle so that he could run his required law enforcement checks and verify Jordon's information.

8. While at the patrol vehicle performing the record checks, Trooper Webb asked Jordon who he was traveling with. Jordon told Trooper Webb he was traveling with his brother Lee (aka Paul McNeal). When asked by Trooper Webb where he was traveling to, Jordon stated they were traveling to Charlotte, North Carolina to see his cousin. Jordon acknowledged the vehicle he was driving was a rental vehicle. Jordon stated the vehicle was rented by his friend Khalid Loobie. Jordon stated he was there visiting an uncle and that he was in California for around four (4) days. When asked how he and McNeal arrived in California, Jordon stated they drove to California from New York in a different vehicle.

9. Once Trooper Webb completed his initial conversation with Jordan, Trooper Webb returned to the rental vehicle to speak with McNeal as well to retrieve the rental agreement information. During his conversation with Trooper Webb, McNeal stated he and Jordon were traveling home to Binghamton, New York. McNeal also said that they might visit some cousins on the way, but when pressed on where the cousins lived, McNeal would only say "on the way."

10. While reviewing the rental agreement documents provided by McNeal, Trooper Webb noticed the vehicle was rented out from AVIS at 9217 Airport Boulevard, Los Angeles, California on November 5, 2022, to Khalid Loobie. The rental vehicle had a return date for November 11, 2022, 10:30 P.M, at 9217 Airport Boulevard, Los Angeles, California. Based on my training and experience, I know that very long trips across country in a short period of time are often indicative of drug trafficking activity and specifically the delivery of drugs.

11. Trooper Webb then returned to his patrol vehicle where Jordon was still seated. Jordon explained to Trooper Webb that he intended to return the rental vehicle by driving back to California and then fly back to New York. Because Jordon and McNeal's stories were different, and the very long distance of the trip with such a short period of time to complete such a long cross-country drive from the East Coast (either from New York or North Carolina) and back to California, Trooper Webb began to suspect that Jordon and McNeal may have been involved in illegal activity.

12. During the follow-up conversation, Trooper Webb informed Jordon that he could smell an odor of marijuana coming from the vehicle. Jordon admitted to Trooper Webb there was marijuana inside the vehicle. When asked how much marijuana was inside the vehicle, Jordon said just a couple of eighths (slang for 1/8th of an ounce or 3.5 grams) of marijuana inside the vehicle and there was nothing else illegal inside. Trooper Webb advised Jordon that he was going to conduct a probable cause search of the vehicle because of the odor of marijuana coming from the vehicle as well as Jordon's admission.

13. Prior to conducting the vehicle search, Trooper Webb went to McNeal and asked him to step out of the vehicle and explained to him that because of the odor of

5

marijuana inside the vehicle, he was going to do a probable cause search of the vehicle. McNeal also admitted there was marijuana in the vehicle. Trooper Webb then requested McNeal have a seat in Oklahoma Highway Patrolman (OHP) Trooper Sawatzky's patrol vehicle while the vehicle was searched.

14. During the search of the vehicle, Deputy James from the Canadian County Sheriff's Office and OHP Trooper Sawatzky assisted in the search. Trooper Webb located the following in a blue handbag in the rear cargo area of the vehicle: six (6) packages labeled THC edibles in a blue handbag and five (5) chocolate candy bars labeled as infused with psilocybin mushrooms. Also in the rear cargo area of the vehicle was a red backpack containing 14 packages labeled as marijuana. A black Marathon gift bag containing 18 containers labeled as marijuana was also found in the vehicle. Inside the black Marathon gift bag was a receipt from the Marathon Collective, 7011 Canoga Ave, Canoga Park, CA 91303 dated November 6, 2022, 2:53 P.M. with Paul McNeal's name on it.

15. While searching the rear cargo area of the vehicle, Trooper Webb also located a brown box on the left side (driver's side) of the cargo area. The box contained approximately 12 bundles (nine (9) vacuum sealed packages and three (3) brown taped packages) of suspected methamphetamines. The brown packages were bundled and sealed in a manner consistent with the packaging of illegal narcotics.

16. Upon conclusion of the search, Trooper Webb returned to his patrol vehicle and informed Jordon he was being arrested for trafficking methamphetamine. Trooper Webb asked Jordon if he wanted to speak with investigators. Jordon stated he did not know what was going on and wanted an attorney. Trooper Sawatzky also asked McNeal

6

if he knew anything about the methamphetamine found in the vehicle; however, he also said he did not know what was going on.

17. In addition to the seizure of the marijuana and the packages of methamphetamine, Trooper Webb seized a gold iPhone 14 Pro **(Target Device 1)** and a blue iPhone 14 Pro Max, IMEI 350141789156385 **(Target Device 2)** from Jordon. Two cell phones were also seized from McNeal which are the subject of a separate affidavit and warrant.

18. Agent Webb transported the evidence to OHP headquarters so that the suspected narcotics could be field tested and weighed. One of the bundles containing the clear crystalline substance tested positive for the presence of methamphetamine. The total estimated weight of the packages was approximately 19.6 lbs. (approximately 9 kilograms).

19. Based on the weight and type of narcotics discovered, HSI Special Agents were subsequently contacted to assist in the federal prosecution of this investigation. **Target Device 1** and **Target Device 2** were then turned over to HSI and have been held for further review.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically an iPhone, have the ability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, access the Internet, and to use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for

7

some period of time on the device. This information can sometimes be recovered with forensic tools.

24. There is probable cause to believe that things that were once stored on the **Target Devices** may still be stored there, at least for the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery"

    c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25. *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device 1** and **Target Device 2** was used, the purpose of its

8

use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Device 1 and Target Device 2** because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by

9

a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. In light of the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of **Target Device 1** and **Target Device 2** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

Fidel Saenz
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me this 13th day of December 2022.

AMANDA MAXFIELD-GREEN
United States Magistrate Judge
Western District of Oklahoma

11

## ATTACHMENT "A"

The **TARGET DEVICE 1** is currently located in the custody of Homeland Security Investigations at 3625 NW 56th Street, Third Floor, Oklahoma City, Oklahoma 73112 (Western District of Oklahoma). The **TARGET DEVICE 1** was locked or password protected at the time of seizure, preventing investigators from obtaining more specific identifying information for the device.

1. Gold Apple iPhone 14 Pro.



The **TARGET DEVICE 2** is currently located in the custody of Homeland Security Investigations at 3625 NW 56th Street, Third Floor, Oklahoma City, Oklahoma 73112 (Western District of Oklahoma). The **TARGET DEVICE 2** was locked or password protected at the time of seizure, preventing investigators from obtaining more specific identifying information for the

2. Blue Apple iPhone 12 Pro Max, IMEI 350141789156385.



## **ATTACHMENT B**

All records on the Target Device(s) described in Attachment A that relate to violations of law, including, specifically 21 U.S.C. § 841(a)(1), possession and distribution of a controlled dangerous substance and 21 U.S.C § 846, conspiracy to possess and distribute drugs. Your Affiant believes there are possibly text messages, contact information, photographs or other items communicated within these devices that provide information about illegal activities which involve **Shawn JORDON** and/ or possible co-conspirators including:

    a.    Stored communications which are voice recordings/messages, text messages (SMS) and multimedia messages (MMS), emails and attachments, read or unread which relate to and provide evidence of criminal activity described in this affidavit;

    b.    Stored communications voice or text based located within downloadable messaging applications or social media applications messaging websites and applications used to conduct or solicit illegal financial transactions, to include: the storage, collection, transmission, distribution, and laundering of proceeds derived from criminal activity.

    c.    All internet usage history that may reveal evidence of money laundering and illegal financial transactions, such as the identification of financial institutions, account numbers, monetary transactions, internet mail communications, electronic payment receipts, etc.;

    d.    Call logs/histories depicting incoming/outgoing numbers dialed to and from the

    above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

e.   Internet World Wide Web (WWW) browser files including browser history, browser cache, browser favorites, auto-complete form history and stored passwords;

f.   Contacts, address books and calendars, customer lists and related identifying information such as names, nicknames and/or monikers within the above described telephone device which relate to and provide evidence of the above described criminal activity and further described in this affidavit;

g.   Photographs, audio/video recordings with their associated metadata relating to and which provide evidence of the above described criminal activity and further described in this affidavit;

h.   Stored location information including global positioning system (GPS) data indicating coordinates, way points, tracks and locations in which the phone has traveled; and,

i.   Data and user records/information, password(s) that would assist in identifying/confirming the owner(s)/user(s) of the above referenced property to be searched.